## INDIAN TERRITORY ILLUMINATING OIL CO. et al. v. POUND et al.

No. 22575. Opinion Filed Oct. 20, 1931.

Rehearing Denied March 29, 1932.

Clayton B. Pierce, A. J. Follens, and A. M. Covington, for petitioners.

Leo J. Williams and M. J. Parmenter, for respondents.

KORNEGAY, J. This is an original proceeding to review the action of the Industrial Commission in making an award in favor of G. R. Pound, against the Indian Territory Illuminating Oil Company and the Aetna Life Insurance Company, carrier.

According to the transcript, employee's first notice of injury and claim for compensation was received on January 8, 1931, by the Industrial Commission. It is claimed therein that, on the 13th of September, 1930, as a result of "lifting heavy casing," the claimant had received a very severe strain of his back, and that he quit work at said time on account of the injury, and had not returned to work yet, and probably never again would be able to do so, and that he requested his employer to furnish medical attention, and the employer had done so, and the name of the attending physician was Dr. Nagle, Colcord Building, Oklahoma City.

The Commission ordered a hearing, and testimony was taken on the 19th of May, 1931, at which hearing the claimant was represented by Mr. Williams as his attorney, and the I. T. I. O. Company and the Aetna Life Insurance Company were represented by attorney. The claimant testified at that hearing that he was employed by J. W. McPeek on the 13th of September, 1930, and that McPeek was engaged in cementing wells for the I. T. I. O. Company, and he himself was engaged in "rolling casings and throwing out casings, picking it up and throwing it out." He stated, in response to a question as to whether he had an accident out there, as follows:

"And lifting the casing up and pulling it back, I felt a hurting coming in my back."

Being asked what happened after the accident, he said:

"Well, I just had an awful weak back, I could not hardly go."

He said he talked to Mr. McPeek, and McPeek told him to get some liniment and put it on.

Something like two months afterwards, he was allowed to go to the doctor, and had not been able to work since. He went to the Von Wedel clinic in November, and stayed until the 3rd of January. He testified that he talked to Mr. Johnson, agent of the Aetna Life Insurance Company, about it, and received directions from him to go and get the number of the well and come back immediately, and that later Mr. Johnson offered him eight weeks' pay. He claimed further that the I. T. I. O. Company paid him, and that he gave to McPeek a small amount of it for his insurance. He further stated that his back bothered him yet.

On cross-examination, it developed that he was one of the American Legion, and that the I. T. I. O. Company was giving them employment, and that Mr. McPeek made arrangements for the job. He was working on the job for the I. T. I. O. Company when he was hurt, and that he belonged to a cement crew; that he quit work immediately after he was hurt. He further stated that shortly after the accident happened he told some of the I. T. I. O. men about it at the I. T. I. O. office. A statement was made by Mr. Pierce, attorney for petitioners, that he thought the claim was first filed against the I. T. I. O. Company as its own risk carrier, but that this was a partnership well, and insurance was carried by the Aetna Life Insurance Company. Respondent was asked if he did not report the matter to the I. T. I. O. Company first about November 20th. He stated that he then filled out the report. He was asked if he knew himself if any part of his backbone was fractured, and he stated that he was unable to work and had pain and trouble in the small of his back and did not think it was any better, and had been unable to work since it happened. He stated that he never had trouble before with his back and he was a cement truck worker by trade and this was the first time he had ever gotten injured.

Dr. Shaw testified about making an examination on the 14th of April, 1931, giving the history of it. Dr. Shaw's report shows that the claimant's version was that he strained and hurt his back on the 13th of September, and that he was advised by the foreman to quit work a few days and thought the back would get all right, and he was not able to do any work, and the foreman sent him to the company physician to be treated. He was getting worse and had pain in the small of his back and stooped or raised with difficulty, and if he made a misstep he got a catch in his back, and prior to the time he received the injury he was in good health.

Physical examination of the doctor showed a stiffness in the back and difficulty in stooping and raising up, and there was apparently pain in the region of the fifth lumbar vertebra and left sacroiliac articulation. It showed that all teeth had been extracted, and that there was some irritation in throat. Heart, chest, lungs, stomach, and bowels were negative. The analysis of the urine showed there was some albumen with occasional white and numerous red blood cells. The X-ray showed calcareous deposits in lumbar spine and along the crest of hip bone.

The conclusions that the doctor reached were that the analysis of the urine showed inflammation of the kidneys, and the X-ray showed that he had arthritis. It is further stated that the history would not indicate that he had either of these conditions before the injury, and was in good health and was able to do ordinary work without undue fatigue. The further conclusion was that the patient did not have a predisposition to either of these conditions, but if so, they were not active and the injury had put them in action. He came to the conclusion that the injury received on September 13, 1930, was responsible for his present condition, and he did not think he was able to do manual labor.

On cross-examination it was brought out that infection was the cause of the diseases that he had—arthritis and kidney inflammation—and that pyorrhea had caused the

removal of the teeth, and that it would cause infection, and that pyelonephritis was a disease of insideous origin. It might have been progressive when he was hurt. Quite often a man suffering from osteo-arthritis would have a catch in the back. He was asked about the callous deposit along the vertebrae and along the crest of the ilium. and that there were other abnormalties in the shape of the stiffness of the back due to the arthritis, and that he had pain in the region of the stiffness in the left sacroiliac articulation. He stated, further, that in his opinion he sustained a strain of the muscles of the back and the muscles are very tense, a condition brought about by the patient undertaking to hold it in that condition to keep it from hurting.

This appears to be the evidence that was offered on behalf of the claimant, and nothing on behalf of the other side. We think unquestionably that there was sufficient evidence to sustain the finding of the Commission that he received an injury during the course of his employment and arising out of it, consisting of a strained back.

Other complaint is now made about the notice to the employer. However, it is patent that no such objection was urged below, and if it had been urged it would have availed nothing. On the contrary, before the Commission, the method of employment of the American Legion members was by the present petitioners developed, especially, and it appears that the work was directed by the foreman of the I. T. I. O. Company, and the men were paid directly on the theory of more or less philanthropy. We do not think that the petitioners were hurt by the lack of notice, and do not think that they could now ask for the award to be set aside on that account.

The award is affirmed.

LESTER, C. J., CLARK, V. C. J., and CULLISON, SWINDALL, and McNEILL, JJ., concur. RILEY, J., not participating. HEFNER and ANDREWS, JJ., absent.